Matthew Singer
Lee C. Baxter
SCHWABE WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125
Facsimile: (503) 796-2900

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE ALASKA LANDMINE LLC, And JEFFREY LANDFIELD, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL J. DUNLEAVY, in his, official capacity as Governor of the State of Alaska; BEN STEVENS, in his official capacity as Chief of Staff to the Governor of the State of Alaska; and JEFF TURNER, in his official capacity as Deputy Communications Director for the Office of the Governor of the State of Alaska, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 3:20-cv-00311-JMK |

**MEMORANDUM IN SUPPORT OF MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I. INTRODUCTION

This case is about protecting the freedom of the press to cover the Governor of

Alaska.  Specifically, it is about ensuring the Governor of Alaska does not get to select

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone:  (907) 339-7125

PDX\LCB\29774301.2

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 1 of 35

which journalists cover his press conferences and bar journalists for arbitrary reasons.

The free speech and due process clauses of the U.S. Constitution and Alaska Constitution prohibit the Governor from excluding credentialed members of the Alaska press from his press conferences without providing a compelling reason for doing so. In contravention of these basic free speech and due process principles, Defendants have refused to allow Plaintiff Jeffrey Landfield ("Landfield") the same access to gubernatorial press events as the other credentialed members of the press. This lawsuit seeks to remedy the Defendants' unconstitutional behavior.

Governor Dunleavy and his office have not always excluded Landfield from gubernatorial press events. For most of 2019, the governor's staff properly included Landfield on email notices and invitations to gubernatorial press conferences and other press events. That changed in early October 2019, when then-Press Secretary Matthew Shuckerow resigned to pursue another job. After Shuckerow's resignation in early October 2019, Defendant Jeff Turner ("Turner") took over the duty of notifying and inviting journalists to press events, and he stopped including Landfield on press invites. Nothing changed except who was controlling the invites. Landfield remains a credentialed member of the press and has not engaged in any disruptive or otherwise improper behavior at gubernatorial press events.

When Turner began excluding Landfield from press conferences, Landfield promptly complained to Turner, the Deputy Communications Director for the governor's office. Turner responded by apologizing for the "oversight." Turner was

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 2 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 2 of 35

being duplicitous. Turner never remedied the "oversight," and continued to leave Landfield off of press notices and invites. Unable to get any explanation whatsoever from Turner, Landfield next took the matter to the governor's Chief of Staff, Ben Stevens ("Stevens"). Stevens listened to Landfield's concern, but ultimately refused to do anything.

From October 2019 through present, Landfield has attempted to work around the governor's office's refusal to acknowledge and treat Landfield as a credentialed member of the press. Landfield has learned about gubernatorial press events through the goodwill of other members of the press, who forward him notices and invites. Landfield then simply shows up to the events uninvited. Unfortunately, despite his efforts to work through the Dunleavy administration's improper treatment, Defendants have made it no longer feasible for Landfield to do his job by structuring gubernatorial press briefings where only those members of the press the governor invites may participate.

On December 11, 2020, Governor Dunleavy held a video conference press conference to discuss his recently released proposed state budget for Fiscal Year 2022. Once again, the governor's office did not invite Landfield to the event, but Landfield learned of it from another journalist. Landfield attended, and during the question and answer portion of the event attempted to ask Governor Dunleavy a question. Defendant Turner was managing the press conference. When Landfield attempted to ask a

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 3 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 3 of 35

question, Turner responded: "Sorry Jeff, we're going to go to closing comments. Thank you."

Plaintiffs are seeking merely equal treatment as other members of the press. Plaintiffs are **not** seeking a ruling that the governor or his administration must call on Landfield at press conferences or answer his questions. Of course, the governor is free to choose which journalists he calls on at press conferences, if any, and is free to answer or not answer any questions posed by journalists. Plaintiffs are not suggesting that the governor may never reduce the number of journalists invited to an event because of space or seating limitations of the venue.[1] If space or seating is a bona fide issue, the governor remains free to limit press attendance based on neutral criteria. But, here, there are no space or seating concerns. Press attendance at these events has diminished over the past few years, and there are always more than enough seats and space for journalists at gubernatorial press conferences and other press events in Anchorage and in Juneau. Furthermore, Plaintiffs are not suggesting that the governor may not adopt a code of conduct or decorum for press conduct at gubernatorial press events. Again, this is not an issue, because Landfield has never caused a disruption at the many gubernatorial press conferences and other press events he has attended. Nor does he oppose such a code of conduct/decorum.

---

[1] *See Frank v. Herter*, 269 F.2d 245, 248-49 (D.C. Cir. 1959) (Burger, J., concurring) (Secretary of State may use neutral criteria to allocate press seats on his plane for a foreign trip).

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 4 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 4 of 35

Landfield and the media outlet he founded, The Alaska Landmine LLC, seek a temporary restraining order and a preliminary injunction against Defendants Governor Dunleavy, Chief of Staff Stevens, and Deputy Communications Director Turner that requires them to treat Landfield the same as every other credentialed member of the press. Plaintiffs seek an injunction that requires Defendants to invite Landfield to gubernatorial press conferences and other press events, and allow Landfield to participate to the same extent other members of the press are allowed to participate. The leading case on the government's wrongful exclusion of a single journalist from executive branch press events, *Sherrill v. Knight*, 569 F.2d 124 (D.C. Cir. 1977), confirms Landfield is entitled to this equal treatment.

## II.     FACTUAL BACKGROUND

Defendants have reversed course over the past year and stopped treating Landfield as a credentialed member of the press. From Governor Dunleavy's inauguration through September 2019, the governor's office included Landfield and The Alaska Landmine on notices and invitations to gubernatorial press briefings and other gubernatorial press events. However, when Defendant Jeff Turner stepped into the role of interacting with the Alaska press in October 2019, this stopped completely. Turner has not included Landfield on notices or invitations to gubernatorial press events. Neither Turner nor anyone else at the governor's office has provided a reason for treating Landfield different than the other members of the credentialed press.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 5 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 5 of 35

In October 2017, Landfield founded The Alaska Landmine as a sole proprietorship for the purpose of shining light on important events that the media had not yet covered.[2] Landfield was concerned with the reduction in local journalism that was occurring in Alaska, as it was across the United States.[3] He hoped that by reporting on these events, he could pique the interest of established media outlets to utilize their resources to get to the truth.[4] Landfield purchased the web domain www.alaskalandmine.com to serve as the main platform for his journalism, and also utilizes the social media platforms Twitter and Facebook to spread his articles.[5]

Landfield's plan was immediately successful. Less than a month after founding The Alaska Landmine, Landfield broke the news that a state senator allegedly acted in an improper sexual manner toward a staffer who was guarding the door to a closed meeting in the Alaska Legislature.[6] After Landfield broke this news, the Legislative Affairs Agency instituted an investigation and the Anchorage Daily News took up reporting on the story.[7]

A couple of examples help illustrate Landfield's and The Alaska Landmine's ability to bring stories of public importance to light. During the fall of 2019, Landfield

---

[2]     Affidavit of Jeff Landfield, ¶ 4 (Dec. 21, 2020).

[3]     Aff. of J. Landfield, ¶¶ 2-3.

[4]     *Id.*, ¶ 4.

[5]     *Id.*, ¶¶ 4 and 8.

[6]     *Id.*, ¶ 4.

[7]     *Id.*

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

and another member of the Alaska Landmine (Paxson Woelber) published *The Bizarre Story of Campbell Lake, The Private Lake That Isn't*.[8]  The article revealed that contrary to the prevailing opinion of the homeowners lining Campbell Lake in Anchorage that the lake was privately owned, Campbell Lake is public lands open for public use and accessible via two section-line easements that cross private tracts of land, one of which is owned by a state senator.[9]  Following The Alaska Landmine's report, the Municipality of Anchorage and State of Alaska issued a joint statement confirming the lake was owned by the state and open to public use and the public was permitted to use the section-line easements identified by The Alaska Landmine to access the waterbody.[10]

Last March, Landfield reported via The Alaska Landmine that Bethel resident Rebecca Trimble, who, unbeknownst to her, was brought to the United States when she was only a few days old, had recently received notice from federal immigration authorities that she had 33 days to leave the country.[11]  *The New York Times* picked up the story, and shortly after U.S. Senators Lisa Murkowski and Dan Sullivan introduced a private bill in Congress to make Trimble a lawful permanent alien resident of the United States.[12]

---

[8]      *Id.*, ¶ 5.

[9]      *Id.*

[10]     *Id.*

[11]     *Id.*, ¶ 6.

[12]     *Id.*

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 7 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Landfield and The Alaska Landmine have also published articles unfavorable to Governor Dunleavy. In May 2019, Landfield published a report that the grandson of a wealthy donor to an independent expenditure group focused on the election of Governor Dunleavy had secured a sole-source contract worth $441,000 from the Alaska Industrial Development and Export Authority.[13] Almost a year later, a follow-up report uncovered that Governor Dunleavy had personally requested the contract be awarded to the grandson.[14] Following this reporting, the grandson opted out of the controversial contract.[15]

The Alaska Landmine has a substantial circulation and regularly publishes pieces on political, business, and cultural happenings in Alaska. The website www.alaskalandmine.com receives tens of thousands of views each week.[16] The Alaska Landmine's Facebook account is followed by 8,982 accounts and its Twitter account is followed by 4,626 accounts.[17] The Alaska Landmine "Radio" section of its website contains 184 long-form interviews/podcasts conducted by Landfield of interviewees such as U.S. Senators Lisa Murkowski and Dan Sullivan, U.S. Representative Don Young, Alaska Governors Dunleavy and Walker, Alaska Chief Medical Officer Anne Zinke, several members of the Anchorage Assembly, several

---

[13] *Id.*, ¶ 7.

[14] *Id.*

[15] *Id.*

[16] *Id.*, ¶ 8.

[17] *Id.*

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 8 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 8 of 35

members of the Alaska Legislature, and many other individuals who are part of Alaska's political and business communities.[18] The Alaska Landmine publishes two weekly columns, and Landfield strives to post a new article every day on top of those columns.[19]

After founding The Alaska Landmine in October 2017, Landfield covered the second session of the 30th Alaska Legislature from Anchorage by making and receiving telephone calls and emails.[20] In November 2018, Governor Dunleavy was elected, and in January 2019, Landfield travelled to Juneau to cover the first session of the 31st Alaska Legislature.[21] Landfield applied with the Alaska Legislature for press credentials, but was denied because, according to the Legislature, he had too recently managed an independent expenditure group supporting then-candidate Joshua Revak.[22] Instead of complaining, Landfield put his nose to the grindstone and worked around the problem as best he could by obtaining press releases and notices of press availability from other helpful journalists.[23]

Despite not having press credentials from the Alaska Legislature during 2019, Governor Dunleavy's office included Landfield in its invitations to gubernatorial press

---

[18] *Id.*

[19] *Id.*, ¶ 9.

[20] *Id.*, ¶ 9.

[21] *Id.*, ¶ 11.

[22] *Id.*

[23] *Id.*, ¶ 12.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 9 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 9 of 35

conferences and other press events.[24]  Governor Dunleavy's Press Secretary Matt Shuckerow invited Landfield to at least sixteen gubernatorial press events in January, February, April, May, June, July, August and September of 2019.[25] Landfield attended most if not all of these events, and was never accused by anyone, including anyone in the governor's office, of causing a disruption or otherwise acting improperly.[26]

In early October 2019, Shuckerow resigned to take another position, and Defendant Jeff Turner was tasked with coordinating gubernatorial press conferences and other press events.[27]  Turner did not continue Shuckerow's practice of inviting Landfield to press events.[28]  On December 11, 2019, Landfield emailed Turner and asked "Is there a reason I didn't get the email about the budget meeting today?  I thought I was on the press list."[29]  Turner responded: "Jeff, I apologize for the oversight."[30]  But Turner continued to schedule press conferences without notifying or inviting

---

[24]    *Id.*, ¶¶ 12-13.

[25]    *Id.*, ¶ 14.

[26]    *Id.*  Prior to one gubernatorial press conference on February 13, 2019, then-Director of Communications for Governor Dunleavy, Mary Ann Pruitt, called Landfield and asked him to stop by her office.  *Id.*, ¶ 13.  Pruitt accused Landfield of placing an "object" under the conference table in the room where the press conference was to take place, but would not tell Landfield what the object was.  *Id.*  Landfield categorically denied placing any object under the table, and Pruitt advised that he could attend the press conference but could not ask any questions.  *Id.*  Landfield later learned that outgoing members of Governor Walker's administration had taped a speedo under the table as a prank to the incoming Dunleavy administration.  *Id.* Landfield had no part or foreknowledge of this prank.  *Id.*

[27]    *Id.*, ¶ 15.

[28]    *Id.*, ¶ 16.

[29]    *Id.*, ¶ 17.

[30]    *Id.*

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 10 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone:  (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 10 of 35

Landfield.[31]  However, in February 2020, Turner telephoned Mollie Barnes, a new reporter for The Alaska Landmine who had previously written for the Juneau Empire, and told her she was invited to a gubernatorial press event because she was a "real journalist."[32]  Barnes reported this exchange to Landfield and attended the event on behalf of The Alaska Landmine.[33]

In January 2020, Landfield returned to Juneau to cover the second session of the 31st Alaska Legislature.[34]  The Alaska Legislature credentialed Landfield as a member of the media.[35]  Below is a true and accurate depiction of Landfield's still-active press pass:[36]



---

[31]     *Id.*

[32]     *Id.*, ¶ 18.

[33]     *Id.*

[34]     *Id.*, ¶ 19.

[35]     *Id.*

[36]     *Id.*

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 11 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone:  (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 11 of 35

Defendant Turner still refused to invite Landfield to gubernatorial press events.[37]

Landfield unsuccessfully brought the matter to Defendant Ben Stevens' attention. Defendant Stevens was and still is Governor Dunleavy's Chief of Staff.[38] In late February/early March 2020, Landfield met with Stevens, and explained the problem.[39] Stevens asked Landfield what Landfield wanted him to do, and Landfield responded that Stevens should tell Turner to put him on the list for notices and invites to gubernatorial press events.[40] Stevens responded that he could not help because there was nothing he could do about Turner not doing his job.[41]

Shortly after this meeting, the novel coronavirus pandemic struck Alaska.[42] The Alaska Legislature adjourned in March 2020, and thereafter most gubernatorial press events have been held via video teleconference.[43] Landfield continued to attend these events, despite not receiving notice or an invitation from the governor's office, when other journalists told him about them.[44]

Landfield's attempted workaround is now completely untenable. On December 11, 2020, Governor Dunleavy held a video conference press conference to discuss his

---

[37] *Id.*, ¶ 20.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*, ¶ 21.
[43] *Id.*
[44] *Id.*, ¶ 21.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 12 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 12 of 35

proposed state budget for FY 2022.[45]  Once again, Defendant Turner did not include Landfield on the press notice and invite for this press conference.[46]  Nevertheless, another journalist forwarded the notice and invite to Landfield, and Landfield called into the press conference.[47]

The press conference lasted just over 48 minutes, with Governor Dunleavy presenting for 18 minutes, and taking questions for roughly 30 minutes.[48]  The event is viewable in its entirety at the Governor's website https://gov.alaska.gov/ newsroom/page/2/ by clicking on "FY 2022 Budget Press Briefing."[49]  Defendant Turner was in attendance and determined which press members were permitted to ask questions.[50]  Following Governor Dunleavy's presentation, Turner called eleven journalists from the following outlets in the following order: Alaska's News Source, Alaska Education Update, Associated Press, Anchorage Daily News, KTOO, Juneau Empire, News of the North, Fairbanks Daily News-Miner, Cordova Times, Ketchikan Daily News, and Alaska Journal of Commerce.[51] At the conclusion of Dunleavy's answer to the Alaska Journal of Commerce, Landfield tried to ask a question by stating "Can I ask a question?" but Turner immediately stated:

---

[45]    *Id.*, ¶ 22.
[46]    *Id.*
[47]    *Id.*
[48]    *Id.*
[49]    *Id.*
[50]    *Id.*
[51]    *Id.*, ¶ 22.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 13 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

> Ok, Governor. That wraps it up for the question and answer period. Uhh, just a quick reminder to the reporters and everyone out there watching this afternoon. All of the budget documents should be posted on the Office of Management and Budget website any moment now. Uhh, so, you should be able to grab those and pull 'em down. And for the reporters please keep an eye out on your inbox. You should be receiving a press release from the Alaska Department of Revenue on the fall revenue source book. And, with that, we'll go back to the Governor for closing comments.[52]

Landfield again sought to interject by stating "Can I ask a question?" Turner responded: "I'm sorry who was that?" Landfield replied: "This is Jeff Landfield. Can I ask a question?" Turner stated: "Sorry, Jeff, we're going to go to closing comments. Thank you."[53] Governor Dunleavy finished his statements and the press conference ended.[54]

Defendants' refusal to treat Landfield equally to the other members of the credentialed press has had an immediate negative impact on Landfield's ability to do his job.[55] Defendants have never provided Landfield a reason why they treat him disparately to the other credentialed press, or why they invited him to these events in 2019, but refuse to invite him in 2020.[56] Landfield has never disrupted or otherwise acted improperly at these press events.[57] While other journalists often inform Landfield of upcoming press events, they forget sometimes. This means Landfield is unable to

---

[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*, ¶ 24.
[56] *Id.*, ¶ 23.
[57] *Id.*, ¶ 25.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 14 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 14 of 35

take videos and photographs of the press conference to use in his reporting, and unable to view the body language of the governor or other speakers.[58]  Most importantly, it appears that Defendant Turner is now only allowing members of the press he invites and who respond that they will attend to ask questions of the governor or other speakers.[59]

On Monday, December 14, 2020, Landfield through his legal counsel sent a demand letter to Defendants and the Acting Attorney General of Alaska.[60]  Landfield demanded that he be treated equally to other credentialed members of the press, and receive confirmation by close of business on Wednesday, December 16, that Defendants would do so.  After Defendants did not provide such confirmation, Landfield drafted and filed his complaint initiating this lawsuit.

## III.    DISCUSSION

*Winter v. Natural Resources Defense Council, Inc.*[61] provides the applicable standard for adjudicating requests for temporary restraining order and preliminary injunction in federal court.  Under *Winter*, the moving party must establish each of the following: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the

---

[58]     *Id.*, ¶ 24.

[59]     *Id.*

[60]     *See* Declaration of Lee Baxter, ¶ 2 (Dec. 23, 2020).

[61]     *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 15 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone:  (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 15 of 35

equities tip in their favor; and (4) that an injunction is in the public interest.[62]  The Ninth Circuit recognizes that a court is permitted to issue a preliminary injunction when the moving party has effectively raised "serious questions on the merits," as opposed to the more arduous burden of establishing a likelihood of success on the merits, so long as the balance of the hardships tips sharply in their favor and they satisfy the other two *Winter* prongs.[63]  The moving party must "'make a showing on all four prongs' of *Winter* to obtain a preliminary injunction."[64]

The moving party has the burden of persuasion.[65]  The Ninth Circuit reviews a district court's grant or denial of a preliminary injunction for "abuse of discretion."[66]

As demonstrated below, Plaintiffs Landfield and The Alaska Landmine are entitled to a temporary restraining order and preliminary injunction under the *Winter* standard, and it would be an abuse of discretion for this Court to deny this motion.

### A. Plaintiffs' Free Speech and Due Process Claims are Likely to Succeed. Alternatively, Plaintiffs have Raised Serious Questions Going to the Merits of this Case

A moving party who shows likelihood of success on the merits has necessarily shown that there are serious and substantial questions going to the merits of the case.

---

[62]     *Id.*

[63]     *See Disability Law Center of Alaska v. Meyer*, ___ F. Supp. 3d ___, ____, 2020 WL 5351595, *2 (D. Alaska Sept. 3, 2020) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)).

[64]     *Disability Law Center of Alaska*, 2020 WL 5351595, at *2 (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1135).

[65]     *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

[66]     *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1141 (9th Cir. 2018) ("'We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion.'"

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 16 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone:  (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 16 of 35

Therefore, Plaintiffs' showing below that they are almost assuredly going to prevail on their free speech and due process claims necessarily meets the lower standard recognized by the Ninth Circuit of serious questions going to the merits.

> **1.** **Plaintiffs are likely to succeed in demonstrating that Defendants' revocation of Landfield's press credentials violated the Free Speech Provisions of the U.S. Constitution and Article I, Section 5 of the Alaska Constitution.**

As shown above, Landfield is a credentialed member of the press. Governor Dunleavy's office treated him as such throughout most of 2019, by providing him the same notifications and invitations to gubernatorial press events as other credentialed members received. Governor Dunleavy's office did an about face in October 2019, when Press Secretary Shuckerow resigned and Defendant Turner took over interfacing with the Alaska media. Defendants' arbitrary treatment of Landfield and The Alaska Landmine violates the free speech principles of the United States and Alaska constitutions.

The D.C. Circuit has dealt with the federal executive branch's refusal to provide credentialed reporters equal access to presidential press events. The D.C. Circuit has long held that "arbitrary or content-based criteria for press pass issuance are prohibited under the first amendment[.]"[67] In *Sherrill v. Knight*, President Nixon's administration denied Robert Sherrill, a journalist for The Nation magazine, press credentials to attend

---

(quoting *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011)).

[67] *Sherrill v. Knight*, 569 F.2d 124, 129 (D.C. Cir. 1977).

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 17 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

presidential press events at the White House, even though he had been credentialed in previous years for such access.[68]  The Nixon administration refused to tell the journalist why it was denying him press credentials.[69]  Sherrill sued, and the D.C. Circuit held that the White House's refusal to issue press credentials implicated core free speech principles:

> We are presented with a situation where the White House has voluntarily decided to establish press facilities for correspondents who need to report therefrom.  These press facilities are perceived as being open to all bona fide Washington-based journalists, whereas most of the White House itself, and press facilities in particular, have not been made available to the general public.  White House press facilities having been made publicly available as a source of information for newsmen, the protection afforded newsgathering under the first amendment guarantee of free of the press[.][70]

The court noted that U.S. Supreme Court precedent required "that this access not be denied arbitrarily or for **less than compelling reasons**."[71]  The connection between the government's attempted control of who had access to cover President Nixon and his administration and free speech was obvious:

> Not only newsmen and the publications for which they write, but also the public at large have an interest protected by the first amendment in assuring that restrictions on newsgathering be no more arduous than necessary, and that individual newsmen not be arbitrarily excluded from sources of information.[72]

---

[68]     *Id*. at 126.

[69]     *Id*. at 126-27.

[70]     *Id*. at 129 (citing *Branzburg v. Hayes*, 408 U.S. 665, 681, 707 (1972); *Pell v. Procunier*, 417 U.S. 817, 829-35 (1974)).

[71]     *Sherrill*, 569 F.2d at 129 (emphasis added) (citing *Southeastern Promotions v. Conrad*, 420 U.S. 546 (1975); *Lovell v. Griffin*, 303 U.S. 444 (1938)).

[72]     *Sherrill*, 569 F.2d at 129-30 (citing *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469,

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 18 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone:  (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 18 of 35

Therefore, the court held the Nixon administration's refusal to provide Sherrill the same access to the White House press facilities and to administration press events implicated "important first amendment rights[,]" and "such refusal must be based on a compelling government interest."[73] The *Sherrill* court further held that the White House was required to publish or otherwise make publicly known "the actual standard employed in determining whether an otherwise eligible journalist will obtain a White House press pass."[74]

The Alaska Constitution's protection of the free speech principles related to newsgathering addressed above is coextensive but is protective in a more "explicit and direct manner."[75] Article I, Section 5 provides: "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." Like the federal standard, under Alaska's Constitution content-based restrictions are subject to strict scrutiny:

> Once a fundamental right under the constitution of Alaska has been shown to be involved and it has been further shown that this constitutionally protected right has been impaired by governmental action, then the government must come forward and meet its substantial burden of establishing that the abridgment in question was justified by a

---

491-92 (1975); *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting); *United States v. Associated Press*, 52 F. Supp. 362, 372 (S.D.N.Y. 1943) ("right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection.")).

[73] *Sherrill*, 569 F.2d at 130.

[74] *Id.* at 130.

[75] *Messerli v. State*, 626 P.2d 81, 83 (Alaska 1980).

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 19 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

**compelling governmental interest**.[76]

Defendants have no such compelling reason to abridge Plaintiffs' newsgathering efforts by excluding Landfield from notices about and invitations to gubernatorial press events.

Here, Defendants, like the Nixon White House, have not articulated any executive branch standard by which they recognize journalists as eligible to receive notice of and invitation to gubernatorial press events. The Alaska Legislature has credentialed Landfield as such, yet Defendants refuse to treat Landfield in the same manner as the other credentialed journalists. Defendants provide the other credentialed journalists prior notice and invitation to gubernatorial press events. As the December 11, 2020 gubernatorial press conference highlights, Defendants also provide the other credentialed journalists an opportunity to respond to these invitations and thereby reserve a chance to ask the presenter questions. Defendants are not providing Landfield these same notices, invitations or a chance to ask questions of presenters at gubernatorial press events. This violates Landfield's and The Alaska Landmine's free speech rights recognized by *Sherrill*.

It goes without saying that the government has no legitimate interest in refusing reporters access to gubernatorial press events based on the content or viewpoint of their reporting.[77] As the First Circuit has explained: "The danger in granting favorable

---

[76] *Club SinRock, LLC v. Municipality of Anchorage*, 445 P.3d 1031, 1037-38 (Alaska 2019) (quoting *Messerli v. State*, 626 P.2d 81, 84 (Alaska 1980)).

[77] *See Cable News Network, Inc. v. American Broadcasting Companies, Inc.*, 518 F. Supp. 1238, 1245 (N.D. Ga. 1981); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 9 (1st Cir. 1986).

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 20 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

treatment to certain members of the media is obvious: it allows the government to influence the type of substantive media coverage that public events will received. Such a practice is unquestionably at odds with the first amendment."[78] The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out,"[79] and discrimination "based upon the content of the journalist's publications."[80] The U.S. Supreme Court holds that content-based and viewpoint-based restrictions "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."[81]

---

[78]     *Cryovac*, 805 F.2d at 9.

[79]     *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

[80]     *Stevens v. N.Y. Racing Ass'n, Inc.*, 665 F. Supp. 164, 175 (E.D.N.Y. 1987). Even when a restriction is not content-based on its face, it is impermissible where circumstantial evidence demonstrates it was motivated by content or viewpoint. *Id.* (finding it likely that a restriction was content-based where the imposer stated off the record that it was based on specific journalists' coverage detracting from attention to the imposer's event). When a government official's "criticism [of the press] transforms into an attempt to use the powers of governmental office to intimidate or to discipline the press or one of its members because of what appears in print, a compelling governmental interest that cannot be served by less restrictive means must be shown for such use to meet Constitutional standards." *Borreca v. Fasi*, 369 F. Supp. 906, 910 (D. Haw. 1974).

[81]     *Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218, 2226 (2015); *Citizens United v. Fed. Election Com'n*, 558 U.S. 310, 340 (2010) ("Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints."); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("Viewpoint discrimination is . . . an egregious form of content discrimination."); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991) ("[T]he government's ability to impose content-based burdens on speech raises the specter that the government may effectively drive certain ideas or viewpoints from the marketplace."); *Regan v. Time, Inc.*, 468 U.S. 641, 648-49 (1984) ("Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment."); *Consol. Edison Co. of New York v. Pub. Serv. Com'n of New York*, 447 U.S. 530, 537-38 (1980) ("[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. . . To allow a government [to discriminate based on viewpoint] would be to allow that government control over the search for political truth."); *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) ("Any [content-based restriction on speech] would completely undercut the profound national commitment to

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 21 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 21 of 35

Here, there can be no serious question that Defendants' *de facto* revocation of Landfield's press credentials for gubernatorial press events is a content- and viewpoint-based punishment imposed on Landfield because Defendants do not like his or The Alaska Landmine's reporting. Governor Dunleavy's administration treated Landfield as a member of the credentialed press from January 2019 through September 2019, until Press Secretary Shuckerow resigned. When Defendant Turner took over in October 2019, Landfield no longer received notice of or invitation to gubernatorial press events. Defendant Turner has refused to explain the governor's office's reversal regarding Landfield's press credentials. Meanwhile, Landfield has broken news highly critical of the Dunleavy administration.[82] The Dunleavy administration appears to disfavor and dismiss the content of Landfield's reporting for The Alaska Landmine as not "real" journalism. This is nonsensical, content-based discrimination.

The Alaska Landmine's readership is substantial and its content covers topics of public importance. The Alaska Landmine's website [www.alaskalandmine.com](www.alaskalandmine.com) receives tens of thousands of views each week.[83] Landfield has broken significant news. For instance, in March 2020, Landfield published an article that resulted in U.S. Senators Lisa Murkowski and Dan Sullivan introducing a private bill to Congress to provide permanent legal immigration status to an Alaskan woman who, unbeknownst

---

the principle that debate on public issues should be uninhibited, robust, and [wide]-open.") (internal quotation marks omitted).

[82] *See* Aff. of J. Landfield, ¶ 7.

[83] *Id.*, ¶ 8.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 22 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 22 of 35

to her, was brought to the United States when she was only days old and was facing mandatory deportation in 33 days.[84]   In September 2019, Landfield and Paxson Woelber published a piece on Campbell Lake that resulted in the State and Municipality of Anchorage confirming that, contrary to the private landowners who own lots surrounding Campbell Lake in Anchorage, the lake was public lands open to public use and accessible via two public easements that crossed private property.[85]   Landfield has also broken news that is highly critical of the Dunleavy administration, and resulted in the grandson of a donor that helped secure Governor Dunleavy's election as governor opting out of a controversial and lucrative contract.[86]

The Alaska Landmine "Radio" section contains over 180 long-form interviews in the form of podcasts with the who's who of Alaska's political, business, and cultural communities.  For Alaska Landmine Radio, Landfield has interviewed, among many others, Governor Dunleavy,[87] Governor William Walker, U.S. Representative Don Young, U.S. Senators Murkowski and Sullivan, Alaska Chief Medical Officer Anne Zink, Health and Human Services Commissioner Adam Crum, several members of the

---

[84]   *Id.*, ¶ 6; *see also* Jeff Landfield, *Government Orders Deportation of Bethel Military Wife and Mother*, THE ALASKA LANDMINE (Mar. 3, 2020) (available at: https://alaskalandmine.com/landmines/government-orders-deportation-of-bethel-military-wife-and-mother/).

[85]   Aff. of J. Landfield, ¶ 5.

[86]   *Id.*, ¶ 7.

[87]   *See* Mike Dunleavy – Episode 66 (available at: https://podcasts.apple.com/us/podcast/mike-dunleavy-episode-66/id1441738651?i=1000436678070).

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 23 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone:  (907) 339-7125

Anchorage Assembly, and several members of the Alaska Legislature.[88]

The Alaska Landmine publishes on a regular basis. It publishes two weekly columns, and Landfield aims to publish one stand-alone column per day, although that is not always possible or feasible.[89] The Alaska Landmine also includes a "Community Voices" section where guest writer pieces are published, as well as an online video series called "The Review," which takes deep looks at news, politics, and current events.[90]

Landfield is a bona fide journalist and The Alaska Landmine is a bona fide media outlet. Any attempt by Defendants to explain their disparate treatment of Landfield by diminishing his or The Alaska Landmine's reporting is content and viewpoint discrimination.

Plaintiffs are likely to succeed on their free speech claims because, as demonstrated above, Defendants' refusal to include Landfield on notices about and invitations to gubernatorial press events implicates Plaintiffs' free speech rights to gather and report news to The Alaska Landmine's readership. Defendants' actions have rendered Plaintiffs unable to attend gubernatorial press events, and unable to ask presenters questions at these events. Defendants have no compelling governmental reason to abridge Plaintiffs' free speech rights in this manner. Indeed, they have refused

---

[88]     Aff. of J. Landfield, ¶ 8.

[89]     *Id.*, ¶ 9.

[90]     *Id.*, ¶ 9.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 24 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

to provide Landfield any reason whatsoever for this disparate treatment. Defendants will be unable to successfully defend their actions against the rights enshrined by the First Amendment of the U.S. Constitution and Article I, Section 5 of the Alaska Constitution.

It bears noting what Plaintiffs do not seek in this lawsuit. Plaintiffs do not seek a ruling that the office of the governor is precluded from limiting who is invited to gubernatorial press events if the venue presents space or seating limitations. The governor's office has the right to use neutral criteria when space is limited.[91] Space and seating is not at issue here, as the state facilities where these events occur were built during a time when the local press was much more robust than it is now, and as a result, Defendants' gubernatorial press events always have more space for the press than is needed.[92] Likewise, Plaintiffs are not seeking a ruling that anyone with a social media presence is entitled to notice of and ability to attend gubernatorial press events. *Sherrill* allows Defendants to limit press access to "bona fide journalists" with appropriate professional credentials.[93] As demonstrated above, Landfield is a bona fide journalist who regularly publishes, travels to Juneau to cover the session, and has conducted one-on-one interviews with the highest government officials in Alaska, including Governor

---

[91] *See Frank v. Herter*, 269 F.2d 245, 248-49 (D.C. Cir. 1959) (Burger, J., concurring) (Secretary of State may use neutral criterial to allocate press seats on his plane for a foreign trip).

[92] Aff. of J. Landfield, ¶ 3.

[93] *Sherrill v. Knight*, 569 F.2d 124, 129 & n.9 (D.C. Cir. 1977).

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 25 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 25 of 35

Dunleavy. A ruling in Plaintiffs' favor does not open the floodgates for anyone with a Twitter handle to demand a seat at the Governor's press conferences.

> **2.** **Plaintiffs are likely to succeed in demonstrating that Defendants violated the due process clauses of the U.S. and Alaska Constitutions.**

Defendants have unconstitutionally revoked Landfield's press credentials for gubernatorial press events after granting Landfield credentials through most of 2019. Defendants rely on the Alaska Legislature to credential bona fide journalists, and have no separate policy for determining who is a real journalist and who is not. As a credentialed member of the press, Landfield is entitled to receive the same notice of and invitation to gubernatorial press events the other credentialed press receive, and that Landfield received for most of 2019. Landfield's press credentials to receive the same notice and invitation are liberty interests protected by the due process clauses of the U.S. and Alaska Constitutions. Defendants' revocation of those credentials in 2020 violated Landfield's due process rights.

*Sherrill* is again the leading case for analyzing when the executive branch's refusal to issue press credentials constitutes a deprivation of the journalist's due process rights.[94] In that case, the D.C. Circuit reasoned that its earlier conclusion that a bona fide journalist had free speech rights to a White House press pass meant that the

---

[94] *Sherrill* applied the due process analysis from the seminal due-process case *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). *Sherrill*, 569 F.2d at 131.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 26 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

journalist was also entitled to due process in the revocation of those credentials.[95] Specifically, the court held a previously credentialed journalist was entitled to the following due process: (1) notices of any factual bases for denial of the press pass, (2) an opportunity for the applicant to respond to those bases, and (3) a final written statement of the reasons for denial.[96] The court went on to conclude that the Nixon administration violated Robert Sherrill's due process rights because the administration had not told him the factual basis for denying renewal of his press credentials, had not provided him an opportunity to rebut, and had not provided Sherrill with a final written determination.[97]

Article I, Section 7 of the Alaska Constitution provides, in relevant part: "No person shall be deprived of life, liberty, or property, without due process of law." The Alaska Supreme Court has explained that the "term 'due process of law' is not susceptible of precise definition or reduction to a mathematical formula. But in the course of judicial decisions it has come to express a basic concept of justice under law[.]"[98] In *Wickersham v. State Commercial Fisheries Entry Commission*,[99] the

---

[95]     *Id*. at 130.

[96]     *Id*. ("In our view, the procedural requirements of notice of the factual bases for denial, an opportunity for the applicant to respond to these, and a final written statement of the reasons for denial are compelled by the foregoing determination that the interest of a bona fide Washington correspondent in obtaining a White House press pass is protected by the first amendment.").

[97]     *Id*. at 131.

[98]     *Bachner v. Pearson*, 479 P.2d 319, 333-34 (Alaska 1970).

[99]     *Wickersham v. State Commercial Fisheries Com'n*, 680 P.2d 1135, 1144-45 (Alaska 1984).

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 27 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Alaska Supreme Court cited with favor the U.S. Supreme Court's precedent on due process, and held that a state fishery commission's denial of untimely fisherman applications to enter the Cook Inlet and Prince William Sound drift gillnet fisheries violated due process because the commission had not provided individual notice of how the application process worked, and denied their appeals.[100]

Here, there is no question that Defendants violated Landfield's due process rights. The governor's office credentialed Landfield as a member of the press through most of 2019, and regularly notified him of and invited him to gubernatorial press events. In late 2019, Defendants reversed course and effectively revoked Landfield's press credentials without explanation. Defendants did not provide Landfield the due process required by *Sherrill*. They did not provide Landfield with notice of the factual bases for denying him a press pass, did not provide him an opportunity to respond to these factual bases, and did not provide him a final written statement of the reasons for denial. Indeed, Defendants have provided Landfield no notice of any reason why they revoked his credentials, have provided him nothing in writing as to why he was denied, have provided him no means of rebutting their decision, and have falsely claimed that omitting him from press conference invitations was merely an "oversight." There is no doubt that Defendants have violated Landfield's due process rights under the Fifth Amendment to the U.S. Constitution and Article I, Section 7 of the Alaska Constitution.

---

[100]      *Id*. at 1144-45.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 28 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 28 of 35

### B. Plaintiffs Will Be Irreparably Injured Absent Immediate Injunctive Relief

Under this prong, this Court must presume that Plaintiffs succeed on the merits of their free speech and due process challenges to Defendants' revocation of Landfield's press credentials for gubernatorial events.[101] Quoting BLACK'S LAW DICTIONARY, the Alaska Supreme Court has explained that an "irreparable injury" is

> an injury, whether great or small, which ought not to be submitted to, on the one hand, or inflicted on the other; and which, because it is so large or so small, or is of such constant and frequent occurrence, or because no certain pecuniary standard exists for the measurement of damages, cannot receive reasonable redress in a court of law.[102]

Defendants' infringement of Landfield's and The Alaska Landmine's free speech and due process rights are precisely the type of damages that constitute "irreparable injuries" under the Alaska Supreme Court's formulation. There is no certain pecuniary standard to measure the damages to Landfield and The Alaska Landmine caused by Defendants 'revocation of Landfield's press credentials to be notified of and invited to gubernatorial press events.

Federal courts agree. A long and unbroken line of cases have established that "[t]he loss of First Amendment freedoms,. . . unquestionably constitutes irreparable

---

[101]    *Alsworth v. Seybert*, 323 P.3d 47, 54 (Alaska 2014) (citing *A.J. Indus., Inc. v. Alaska Pub. Serv. Comm'n*, 470 P.2d 537, 540 (Alaska 1970)) ("Our rationale in adopting the balance of hardships rule in *A.J. Industries* demonstrates that a court is to assume the plaintiff ultimately will prevail when assessing the irreparable harm to the plaintiff absent an injunction, and to assume the defendant ultimately will prevail when assessing the harm to the defendant from the injunction[.]").

[102]    *State v. Kluti Kaah Native Village of Copper Center*, 831 P.2d 1270, 1273 n.5 (Alaska 1992).

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 29 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

injury."[103]  That includes free speech violations "for even minimal periods of time."[104]  Indeed, the mere fact that free speech violations may have a chilling effect on speech is enough to satisfy the irreparable injury standard.[105]  Defendants, by revoking Landfield's press pass, have certainly put other reporters on notice that unfavorable coverage may lead to the reporter losing his or her ability to attend gubernatorial press briefings, a must for any capital journalist.

Courts have held that restrictions on a reporter's coverage of White House and government affairs, like those placed on Landfield here, constitute irreparable injury to the reporters themselves, to the outlets they work for, and to the public at large.  In *Cable News Network, Inc. v. American Broadcasting Companies, Inc.*,[106] for example, several television crews were excluded from White House pool coverage.[107]  The court granted a preliminary injunction, noting that, absent such relief, the plaintiffs would "suffer irreparable injury."[108]  The court reasoned that by excluding these news outlets, "a complete visual record of the Presidential activities covered by the press pools is lost

---

[103]  *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (same); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (same); *Westinghouse Broad. Co., Inc. v. Dukakis*, 409 F. Supp. 895, 896 (D. Mass. 1976).

[104]  *Pursuing America's Greatness*, 831 F.3d at 511.

[105]  *DeGuiseppe v. Vill. of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995) ("[R]etaliation need not be monstrous to be actionable under the First Amendment; it need merely create the potential for chilling . . . speech on matters of public concern.").

[106]  *Cable News Network, Inc. v. American Broadcasting Companies, Inc.*, 518 F. Supp. 1238 (N.D. Ga. 1981).

[107]  *Id*. at 1245-46.

[108]  *Id*. at 1245.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 30 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone:  (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 30 of 35

forever"—a loss that "clearly constitutes irreparable injury to [the news outlets], as well as the public."[109]

The court reached a similar result in *Cable News Network, Inc. & Acosta v. Trump*,[110] a case involving the Trump administration's revocation of CNN correspondent Jim Acosta's White House credentials following a testy exchange between Acosta and President Trump regarding a caravan approaching the southern border of the United States.[111] Judge Kelly of the United States District Court for the District of Columbia applied *Sherrill* and easily concluded that the administration's revocation of Acosta's press pass constituted irreparable injury to Acosta, regardless of CNN's ability to immediately replace Acosta with another White House correspondent:

> [T]he First Amendment interests, as recognized in *Sherrill*, were not vested merely in publications or agencies. They were liberties of the individual journalists themselves. For that reason, that CNN may still send another journalist or other journalist to the White House does not make the harm to Mr. Acosta any less irreparable. Each day that he is deprived of that interest without the process prescribed by the court in *Sherrill*, he suffers a harm that cannot be remedied in retrospect. The Court cannot restore his access to press briefings that have already occurred or to conversations in the White House press facilities that have already been had.

And so on this highly, highly unusual set of facts and interests at stake, I

---

[109]     *Id.* at 1246.

[110]     *Cable News Network, Inc. & Acosta v. Trump*, 1:18-cv-02610-TJK (D.D.C. 2018). This case is not reported on Westlaw and is only viewable through the federal PACER docketing system. Plaintiffs attach to this brief the transcript in which Judge Timothy Kelly issued his oral decision as **Exhibit W**. The relevant discussion is on pages 11-13 of the attached transcript.

[111]     *See* Richard Gonzales, *White House Revokes Press Pass of CNN's Jim Acosta* (Nov. 7, 2018) (available at: https://www.npr.org/2018/11/07/665497382/white-house-revokes-press-pass-of-cnns-jim-acosta).

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 31 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 31 of 35

do find that the plaintiffs have met their burden of establishing that irreparable harm has and will continue to occur in the absence of preliminary relief.[112]

The Court granted the temporary restraining order requiring the Trump administration to restore Acosta's press credentials.[113]

The U.S. Supreme Court and Ninth Circuit have repeatedly held that loss of free speech freedoms even for minimal periods of time "unquestionably constitutes irreparable injury."[114] The harm is particularly irreparable where, as here, Plaintiffs seeks to engage in political speech, as "timing is of the essence in politics" and "[a] delay of even a day or two may be intolerable...."[115] Plaintiffs have therefore demonstrated a likelihood of irreparable injury in the absence of an injunction.

### C. The Balance of the Equities Tip Sharply In Favor of Granting Plaintiffs Immediately Injunctive Relief

This prong requires this Court to balance the competing interests of Defendants to withhold notice of and not invite Plaintiffs to gubernatorial press events against Plaintiffs' rights to free speech and due process under the federal and state constitutions. This balancing test is meant to ensure weak claims for preliminary injunction do not override the opposing party's interests. As this Court recently recognized, "a

---

[112] **Exhibit W**, Transcript of *CNN v. Trump* Oral Ruling, at 13.

[113] *Id*. at 14.

[114] *Elrod v. Burns*, 427 U.S. 347, 373; *Klein v. City of San Clemente*, 548 F.3d 1196, 1207-08 (9th Cir. 2009) (collecting cases).

[115] *Klein*, 548 F.3d at 1208 (quoting *Long Beach Area Peace Network v. City of Long Beach*, 522 F.3d 1010, 1020 (9th Cir. 2008) and *NAACP v. City of Richmond*, 743 F.2d 1346, 1356 (9th Cir. 1984)).

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 32 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 32 of 35

'preliminary injunction is an extraordinary remedy never awarded as of right . . .' and this Court 'must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences.'"[116]

Here, the balance of equities is not even close. Given the substantial free speech and due process violations at issue here and the *immediate* negative impact on Plaintiffs, the equities sharply tip in Plaintiffs' favor and counsels entry of immediate injunctive relief. "Ordinarily, such a threatened injury to the plaintiff will easily outweigh whatever burden the injunction may impose, because the government is in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions."[117] In such situations, any harm to defendant is insignificant. Indeed, even in *Cable News Network*—which involved the wholesale exclusion of several television outlets from White House pool coverage—the court held that the restoration of access to these outlets "would merely involve some minor inconvenience to the White House press staff," a harm that would pale in comparison

---

[116]    *Disability Law Center of Alaska v. Meyer*, ___ F. Supp. 3d ___, ____, 2020 WL 5351595, *4 (D. Alaska Sept. 3, 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).

[117]    *Hassay v. Mayor*, 955 F. Supp. 2d 505, 517 (D. Md. 2013) (citation and quotation marks omitted); *Telemundo v. City of Los Angeles*, 283 F. Supp. 2d 1095, 1103-04 (C.D. Cal. 2003) (where news outlet had initially been compelled to delay one of its broadcasts in light of defendants' production, holding that "equitable considerations [did] not weigh in favor of denying the preliminary injunction" on the ground that defendants' "commercial interest in the production . . . [did] not outweigh [the news outlet's] First Amendment rights and the public interest in diversity of coverage of newsworthy events").

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 33 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK    Document 4    Filed 12/23/20    Page 33 of 35

to the irreparable harm plaintiffs and the public would endure absent such relief.[118]

Defendants are adequately protected from a wrongfully issued injunction and the balance of the equities tips sharply in favor of granting Plaintiffs' requested injunctive relief.

### D.    The Public Interest Favors Issuance of Immediate Injunctive Relief

The public interest also militates in Plaintiffs' favor and issuance of immediate injunctive relief.  Courts have consistently held that the public's unfettered access to news coverage is an interest warranting injunctive relief.[119]  Consistent with these cases, here, "[t]he pending analysis should clearly indicate that the public interest will be significantly benefitted, and in no way harmed, by the granting of the injunctive relief sought.  [Landfield's] participation in [coverage of gubernatorial press events] benefits the public by informing it of the activities of its government.[120]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue a temporary restraining order and preliminarily enjoin Defendants, requiring them to restore Landfield's press credentials to receive notice of and invitation to gubernatorial press events.

---

[118]    *Cable News Network, Inc. v. American Broadcasting Companies, Inc.*, 518 F. Supp. 1238, 1246 (N.D. Ga. 1981).

[119]    *See e.g. Sherrill v. Knight*, 569 F.2d 124, 129-30 (D.C. Cir. 1977); *Telemundo*, 283 F. Supp. 2d at 1103-04.

[120]    *Cable News Network, Inc.*, 518 F. Supp. at 1246.

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 34 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone:  (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 34 of 35

DATED at Anchorage, Alaska, this 23rd day of December, 2020.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys for Plaintiffs

By: _/s/Matthew Singer_____
     Matthew Singer
     Alaska Bar No. 9911072
     Email: msinger@schwabe.com

By: _/s/Lee C. Baxter_____
     Lee C. Baxter
     Alaska Bar No. 1510085
     Email: lbaxter@schwabe.com
     420 L Street, Suite 400
     Anchorage, AK 99501
     Telephone: (907) 339-7125
     Facsimile: (503) 796-2900

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2020, a true and correct copy of the foregoing document was served via the Court's CM/ECF electronic service on the following counsel of record:

Lael A. Harrison
Assistant Attorney General
Alaska Department of Law
Email: lael.harrison@alaska.gov

_/s/Matthew Singer_____

MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PI
*THE ALASKA LANDMINE LLC, ET AL. V. MICHAEL J. DUNLEAVEY, ET AL.*
CASE NO. 3:20-CV-00311-JMK – PAGE 35 OF 35

SCHWABE, WILLIAMSON & WYATT, P.C.
420 L Street, Suite 400
Anchorage, AK 99501
Telephone: (907) 339-7125

Case 3:20-cv-00311-JMK   Document 4   Filed 12/23/20   Page 35 of 35